**Riley Estate**

*Francis Moran,* for petitioner.
*Leonard Turner,* contra.

SHOYER, J., April 9, 1973.—Marian Aldrich, maternal grandmother of the three minor Riley children, has filed this petition to appoint a guardian of their estates. Warren Riley, 3rd, born August 29, 1965, Sjanna Riley, born February 21, 1968, and Chase Brock Riley, born May 9, 1969, are the children of Warren and Constance Riley. Constance Riley was murdered on November 22, 1971, in Philadelphia, Pa. Warren Riley, the deceased's husband, was convicted of her murder in the second degree on April 27, 1972. His post trial motions have been denied and he has been sentenced to a 7 to 20-year-term of imprisonment. An appeal from the judgment of sentence has been taken to our State Supreme Court.

At the time of the murder of Constance Riley, the deceased, and her minor children resided at 4834 Hoopes Street, Philadelphia, Pa. Following the death of their mother, their father was taken into custody by the police and the maternal grandmother of the children came from her home in Cleveland, Ohio, to Philadelphia and then took the children back with her so that they have been residing with her since their mother's death.

The petition of the maternal grandmother avers the necessity of a guardian of the estates of the minors because they are beneficiaries of certain insurance policies on the life of Constance Riley. Warren Riley,

the original beneficiary, having been convicted of the murder of Constance Riley, is not eligible to receive such funds under the Slayer's Act of August 5, 1941, P. L. 816, 20 PS §3441, §8811(a) of the Probate, Estates and Fidudiciaries Code of June 30, 1972, no. 164, effective July 1, 1972, formerly 20 PS §3451. Policies No. 33-101-372 and 33-053-253 in the face amount of $15,000 and $1,346, respectively, were issued by the New York Life Insurance Company, and the minor children are named as the alternate beneficiaries.

The proposed guardian is Raymond P. Forceno, Esq., a member of the Philadelphia bar. Attached to the petition is a letter from the New York Life Insurance Company, Death Benefit Division, dated November 15, 1972, addressed to Mr. Francis J. Moran, who is counsel for petitioner. Said letter asks, "Can you please advise when we may expect to receive the letters of guardianship in order that we may effect settlement of this claim?"

An answer opposing the prayer of the petition has been filed by Warren Riley, father of the minors, through his court-appointed attorney, Leonard Turner, Esq. Mr. Turner was appointed to defend Warren Riley against the murder charge. His appointment was pursuant to the Act of July 22, 1970, P. L. 535 (no. 180), 19 PS §1501. This act requires that an indigent defendant ". . . make and file with the clerk of quarter sessions an affidavit setting forth that he is wholly destitute of means to employ counsel and prepare for his . . . defense." We assume that such an affidavit has been filed.

In the answer which Mr. Turner signed and filed on behalf of his client, no objection to the qualifications of the proposed guardian is made, but it is denied that a guardian is necessary, because the father of

the minors, Warren Riley, has not yet been finally adjudicated to be the slayer of the insured, Constance Riley. It is further denied that any money can be received at this time by any guardian to be appointed, since Warren Riley is the beneficiary of the aforesaid policies, and if his conviction should be reversed, he, then, would be entitled to the proceeds of the policies.

It is further averred that claim is being entered by Warren Riley against the insurance company, and the latter is being instructed to not pay the proceeds of the policies pending the final outcome of the murder indictment against Warren Riley, 2d.

Under new matter in the father's answer, it is averred "that this court has no jurisdiction to appoint a guardian for these minors as there is no allegation that the minors reside in Philadelphia County, and on the contrary, the minors reside in Ohio and there is no estate or property in Pennsylvania due the minors."

The jurisdiction of this court is determined by section 5111(a) of the Probate, Estates and Fiduciaries Code, reading as follows:

"A guardian of the person or of the estate of a minor may be appointed by the court of the county in which the minor resides."

While the statute refers to residence, it has been held that either residence or domicile will suffice to give the court jurisdiction. In Fossleitner Appeal, 435 Pa. 325 (1969), our Supreme Court recently had occasion to construe section 1011(a) of the Fiduciaries Act of April 18, 1949, P. L. 512, 20 PS §320.1011, the predecessor of section 5111(a) in the present code. This court said at page 333:

"In order for the lower Court to exercise jurisdiction, there must be a legally recognized relationship

between the State and the persons over whom the State seeks to exercise jurisdiction. A State has power to exercise judicial jurisdiction over an individual who is either a resident or a domiciliary of the State. Restatement 2nd, Conflict of Laws, Proposed Official Draft, §27 . . . It is a *general rule* that a minor cannot acquire a residence or domicile of his own apart from one of his parents: 3 Hunter, Orphans' Court 146, §2 (b); McIlhenney Guardian, 3 Pa. D. & C. 2d 561, 563 (1955); 5 Partridge-Remick, Pennsylvania Orphans' Court Practice 210, §36.05."

Continuing, our Supreme Court said, at page 334:

"It is also a *general rule* that a minor has *the same residence* and domicile as the parent with whom he lives. However, if one parent dies or is incompetent, the minor's domicile is that of the surviving parent; or if both parents are dead, or one is dead and the other parent is incompetent or cannot be found, or if the minor is abandoned by both parents and no guardian has been appointed, the child can acquire a residence and domicile at the home of a grandparent or other person who stands in loco parentis to him *and with whom he lives:* McIlhenney Guardian, 3 Pa. D. & C. 2d, supra. Unless there is some compelling or adequate reason to the contrary, the child's domicile should be in the place or home of the person with whom he lives, especially if that person stands in loco parentis to him, even though that person is not a blood relative: Restatement 2d, Conflict of Laws, Proposed Official Draft §22, comment i." (Italics supplied.)

In Fossleitner Appeal, a paternal uncle living in Maryland sought to obtain guardianship of the person of two minor children who had been living with their maternal grandmother in Austria. There, as here, the father had slain the mother, but in Fossleitner,

the father was found to be incompetent and confined thereafter in a hospital for the insane. Here, there is no suspicion that Warren Riley is mentally incompetent, nor did he attempt suicide as in McIlhenney Guardian, 3 Pa. D. & C. 2d 561 (1955), where this court found as a fact that the father had abandoned the minor child by his attempted suicide, so that removal of the child from Baltimore to Philadelphia by a maternal aunt was held to give this court jurisdiction over a petition to appoint a guardian of the person despite the objection of the father.

Here, it is noted that the petition does not ask for a guardian of the person but merely a guardian of the estate. Warren Riley, in his answer, states that the minors now reside with their maternal grandmother in Cleveland and it is further averred that they were taken to her residence in Cleveland without his consent. Under these circumstances, we see no "compelling or adequate reason" to change the domicile of the minors to Cleveland. We find as a fact and as a conclusion of law that, although the children are physically resident in Cleveland, they still maintain their legal domicile here in Philadelphia where they were living at the time of their mother's death. Philadelphia is also the domiciliary home of Warren Riley, the father. Such being the case, this court has jurisdiction to appoint a guardian for the estates of these three minors.

We are fortified in so holding by subsection (b) of section 5111 of the Probate, Estates and Fiduciaries Code headed "Non-resident minor." The second sentence of that section provides: "When the nonresident minor's estate is derived otherwise than from a decedent's estate or a trust, a guardian may be appointed by the court of any county where an asset of the minor's estate is located." The proceeds of these

insurance policies on the life of their deceased mother are certainly *assets* to which the guardian has a valid claim on behalf of these minors, inasmuch as the Insurance Company has already indicated its intention of making payment as soon as a Philadelphia guardian is legally appointed. See Rodriguez Estate, 6 D. & C. 2d 521, 524, 6 Fiduc. Rep. 583, 586 (1956).

A compelling reason for us to act is that the indigency of the father having been established, funds are needed for the support, maintenance and education of these minors, which the father is unable to provide. Petitioner in paragraph 10 has averred the financial need of the children which is not denied in the answer. While we recognize the truth of Mr. Turner's complaint that the judgment of conviction of murder may be reversed on appeal, we do not view that as a valid objection to our authorizing the guardian to claim the insurance proceeds. When obtained by the guardian, these funds will be fully protected and restricted to proper allowances for the minors by this court. Furthermore, Mr. Forceno has agreed that he "will serve at no cost or charge to the minors' estates."

The father's *conviction* cannot be retried in the Orphans' Court Division (Kravitz Estate, 418 Pa. 319 (1965)), and if he should be finally acquitted, he could then recover the insurance proceeds from the guardian subject to all proper expenditures for the needed support of his minor children.

We have no hesitancy in acting favorably on the petition for the appointment of a guardian for the estates of these three minors and, therefore, we enter the following

## DECREE

And now, April 9, 1973, upon consideration of the

annexed petition and after hearing, Raymond P. Forceno, Esquire, is appointed guardian of the Estates of Warren Riley, 3rd, Sjanna Riley and Chase Brock Riley, minors.

In lieu of the entry of security, the guardian is authorized and directed to invest the funds belonging to the above-named minors as provided hereunder, that is:

To deposit the sum of $5,894.35 in the Liberty Federal Savings and Loan Association, in a savings account, in his name as guardian of the Estate of Warren Riley, 3rd, one of the above-named minors, marked as hereinafter directed; to deposit the sum of $5,894.35 in the Liberty Federal Savings and Loan Association, in a savings account, in his name as guardian of the Estate of Sjanna Riley, one of the above-named minors, marked as hereinafter directed; and to deposit the sum of $5,894.34 in the Liberty Federal Savings and Loan Association, in a savings account, in his name as guardian of the Estate of Chase Brock Riley, one of the above-named minors, marked as hereinafter directed.

The deposit book opened for Warren Riley, 3rd, shall be marked: "Not to be withdrawn before August 29, 1983, except on Order of Court."

The deposit book opened for Sjanna Riley shall be marked: "Not to be withdrawn before February 21, 1986, except on Order of Court."

The deposit book opened for Chase Brock Riley shall be marked: "Not to be withdrawn before May 9, 1987, except on Order of Court."

Each deposit book marked as directed is to be produced to the court for inspection and approval immediately upon receipt by the guardian.

The guardian is further authorized and directed to deposit other income belonging to the minor, if any,

in the savings account opened pursuant to this decree.

If no withdrawals are made from the investments authorized by this decree, the bank may pay over the investments as provided in this decree as follows: when the minor Warren Riley, 3rd, attains his majority, on August 29, 1983; when the minor Sjanna Riley attains her majority, on February 21, 1986; and when Chase Brock Riley attains his majority on May 9, 1987. These payments may be made by the bank upon the joint order of the guardian and the late minors without further order of court.