WICKER, Judge.
The plaintiff-in-rule, Lea Victoria Proven-sal Pugh (Vicky), petitioned to have her half brother, the defendant, Richard Michael Scott (Rick), declared unworthy to inherit in his mother’s succession. Vicky’s motion for summary judgment was granted and Rick appealed. We affirm.
The decedent, Jacqueline Hauler Proven-sal, had three children. Her son, Rick, was born of her first marriage. Her two daughters, Vicky and her sister, Michelle Provensal (Michelle), were born of her second marriage. Mrs. Provensal was a widow at the time of her death.
Mrs. Provensal died either during or immediately after an altercation with Rick. Rick claims his mother was in a drunken state at the time of her death, that he struck her in the face only to try to sober her up, and that she fell during her attack on him. Nevertheless, Rick was indicted for second degree murder and ultimately pleaded guilty to manslaughter. He received a sentence of five years at hard labor.
Mrs. Provensal left a will naming Michelle as her executrix. However, Michelle had been an absentee from the State of Louisiana for some time; and apparently her place of residence was unknown at the time of her mother’s death. Vicky petitioned the court for probate of her mother’s will, and she was ultimately appointed dative testamentary executrix by the trial court.
Vicky petitioned the court to have Rick declared unworthy to inherit, based upon his manslaughter conviction. L.S.A.-C.C. art. 966. Rick challenged the sufficiency of the bond posted by Vicky and her actions in handling this succession. Both Vicky’s motion for summary judgment on the unworthiness claim and Rick’s motion to remove succession representative and test surety were set for hearing at the same time. In addition, Vicky’s exception of no right of action, which was based upon Rick’s alleged unworthiness and consequent lack of standing to challenge her, was also heard.
The trial judge granted the motion for summary judgment, holding that the minute entries of Rick’s guilty plea and sentencing, in the criminal case of State of Louisiana v. Richard Michael Scott, No. 84-2154, 24th Judicial District Court for the Parish of Jefferson, were a sufficient showing of unworthiness. He held that these entries showed that there was no genuine issue of material fact. He refused to allow testimony or evidence on behalf of Rick to show motive, intent, or circumstances. He further found that, because of his unworthiness, Rick had no right of action or standing to bring his motion; and the trial judge denied the motion to remove succession representative and test surety.
The important issue, and it is res nova in Louisiana, is whether, for purposes of finding unworthiness, the “killing” referred to in L.S.A.-C.C. art. 966 must be an intentional killing. Rick raises other issues: whether Michelle as well as Vicky must *1172 join in any petition to disqualify Rick; whether Rick’s immediate seizin requires the trial judge to rule on his motions prior to disqualifying him; and whether the trial judge must first rule on Vicky’s qualifications as dative testamentary executrix pri- or to allowing her to have Rick declared unworthy.
We hold that Vicky is the proper plaintiff in this action, since she has been named dative testamentary executrix. L.S. A.-C.C.P. art. 685.
Art. 685. Succession
Except as otherwise provided by law, the succession representative appointed by a court of this state is the proper plaintiff to sue to enforce a right of the deceased or of his succession, while the latter is under administration. The heirs or legatees of the deceased, whether present or represented in the state or not, need not be joined as parties, whether the action is personal, real, or mixed.
Estate of Richard v. Richard, 321 So.2d 375 (La.App. 3rd Cir.1975). Furthermore, Michelle, even if she were either an indispensable or a necessary party, has been joined as a defendant and has a curator ad hoc to represent her interests.
Vicky relies upon L.S.A.-C.C. art. 966(1): Persons unworthy of inheriting, and, as such, deprived of the successions to which they are called, are the following:
1. Those who are convicted of having killed, or attempted to kill, the deceased; and in this respect they will not be the less unworthy, though they may have been pardoned after their conviction.
L.S.A.-C.C. art. 966 comes from the Code Napoleon of 1804. Article 727 deemed as unworthy “Celui qui serait condamné pour avoir donné ou tenté de donner la mort au défunt.” (“He who shall be convicted of killing or attempting to kill the deceased.”) In his commentary on this code article, Marcel Planiol writes that unworthiness is a penalty for serious offenses against the person of the deceased. It is not an interpretation of the deceased’s presumed wish but is invoked in the name of public morality. Treatise on the Civil Law, Vol. 3, Part 1, by Marcel Planiol, Sections 1731, 1736, 1739 and 1740, (Eleventh Edition, 1938), translated by the Louisiana Law Institute (Copyright 1959).
The equivalent of L.S.A.-C.C. art. 966(1) appeared in the 1808 Civil Code as Art. 66 and referred to “Celles qui sont convain-cues d’avoir tué ou essayé de tuer le défunt, hors des cas ou l'homicide peut s’exeuser ou se justifier.” (“Those who are convicted of having killed, or attempted to kill the deceased, — unless the case should be one of excusable or justifiable homicide.”)
The 1825 Civil Code and Projet continued the same provision numbering it as Art. 960. “Celles qui sont condamnées pour avoir tué ou essayé de tuer le défunt, et á cet égard elles n’auront pas moins encouru l’indignité quoiqu’aprés la condamnation elles aient obtenu leur grace ou leur pardon.” (The English translation of this portion of Art. 960 is the same as today’s Art. 966(1), supra.)
No Louisiana jurisprudence sheds light on the issue of intent, since no conviction was ever obtained in the reported unworthiness cases. Sharp v. Sharp, 228 La. 89, 81 So.2d 820 (1955); Succ’n of Medica, 163 So.2d 425 (La.App. 2d Cir.1964), writ denied 246 La. 379, 164 So.2d 362 (1964).
The present Louisiana Criminal Code lists five grades of homicide: first degree murder, second degree murder, manslaughter, negligent homicide, and vehicular homicide. L.S.A.-R.S. 14:29. Manslaughter, L.S.A.-R.S. 14:31, is a “killing.”[1]
Manslaughter is:
(1) A homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self control and cool reflection. Provocation *1173 shall not reduce a homicide to manslaughter if the jury finds that the offender’s blood had actually cooled, or that an average person’s blood would have cooled, at the time the offense was committed; or
(2) A homicide committed, without any intent to cause death or great bodily harm.
(a) When the offender is engaged in the perpetration or attempted perpetration of any felony not enumerated in Articles 30 or 30.1, or of any intentional misdemean- or directly affecting the person; or
(b) When the offender is resisting lawful arrest by means, or in a manner, not inherently dangerous, and the circumstances are such that the killing would not be murder under Articles 30 or 30.1.
Whoever commits manslaughter shall be imprisoned at hard labor for not more than twenty-one years.
Rick argues that he pleaded guilty to R.S. 14:31(2)(a), which treats of “a homicide committed, without any intent to cause death or great bodily harm.” His plea of guilty to manslaughter conclusively admits that he committed a simple battery upon his mother resulting in her death.
Early Louisiana criminal law was largely based upon the English common law. “In 1805 ... Louisiana consciously chose the system of common law crimes as a source of reference.” Morrow, Analysis of the Criminal Code, 17 TuLL.Rev. 1, 14 (1942). The Crimes Act of 1805 (Laws of the Territory of Orleans of 1805) “provided a system of criminal law for Louisiana simply by denouncing as crimes a number of offenses and then saying that such crimes should be taken, intended and construed according to and in conformity with the common law of England.” Smith, The Louisiana Criminal Code: Its Background and General Plan, 5 La.L.Rev. 1, 2 (1942). The Crimes Act “simply provided penalties for murder and manslaughter and directed the courts to look to the common law of England for definitions.” Bennett, Comparison of the Criminal Code with Prior Criminal Law, 5 La.L.Rev. 6, 23 (1942).
An early compilation (not codification) of the criminal law in Louisiana appears in the Revised Statutes of 1870. There were two homicide offenses, willful murder and manslaughter; and the statutes specifically noted that there was no such crime as second degree murder. Sections 784, 785, and 786, Revised Statutes of 1870.
Louisiana criminal law was first codified in Acts 1942, No. 43 Sec. 1. This codification expanded the grades of homicide to three: murder, manslaughter, and negligent homicide. (Arts. 29, 30, 31, and 32.) This Code made such sweeping changes “that the common law concepts are not recognizable. It can now be said truly that Louisiana has its own law of crimes — the mature culmination of its century and a quarter of development in that field.” Bennett, supra at 13.
Two categories of murder were in the 1942 Code: killing with specific intent and killing in the course of certain enumerated felonies. (Art. 30) Manslaughter was not divided into voluntary and involuntary, but it too had two categories, as it does today.
Art. 31. Manslaughter is:
(1) A homicide which would be murder under subdivision (1) of Article 30 (murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender’s blood had actually cooled, or that an average person’s blood would have cooled, at the time the offense was committed; or
(2) A homicide committed, without any intent to cause death or great bodily harm,
(a) When the offender is engaged in the perpetration or attempted perpetration of any felony not enumerated in Article 30, or of any intentional misdemeanor directly affecting the person; or
(b) When the offender is resisting lawful arrest by means, or in a manner, not inherently dangerous, and the cir *1174 cumstances are such that the killing would not be murder under subdivision
(1)of Article 30.
Whoever commits manslaughter shall be imprisoned at hard labor for not more than twenty-one years.
“Subdivision (2) is similar to, but not quite as broad as, the offense which is usually labelled involuntary manslaughter.” Comment, Acts 1942, No. 43 Sec. 1, Art. 31. Negligent homicide, Art. 32, was a new offense but had something in common with the offense of involuntary homicide (Acts 1930, No. 64, Sections 1-6), which had been limited to vehicular killing. Comment, Acts 1942, No. 43 Sec. 1, Art. 32.
Acts 1973, No. 110, Sec. 1 increased the grades of homicide to four, splitting murder into first and second degree. Acts 1983, No. 635, Sec. 1 added the fifth homicide offense: vehicular homicide.
The instant case falls squarely within R.S. 14:31(2)(a). Accepting Rick’s arguments and allegations as true, his conviction is within the scope of the unworthiness statute and proscribes his entitlement to inherit.
For this court to require intent would be to reach an anomalous result, especially with regard to cases falling under R.S. 14:30.1(2), felony murder, where intent to kill or inflict great bodily harm is not a necessary element. It would impose an additional requirement on the plaintiff beyond what would be necessary for a criminal conviction: proof that the death resulting from one of these heinous crimes (aggravated rape, armed robbery, etc.) had been intentional.
Louisiana is a civilian jurisdiction, and for that reason common law cases are not generally persuasive on interpretation of our Civil Code. We look to our civilian heritage and commentators for this purpose. In this case, however, common law jurisprudence is helpful for two reasons: the common law origins of our criminal law and several cases from other jurisdictions. In many of these states, intent to kill is not a requisite to preclude recovery under a will or by intestacy. In re Kravitz’ Estate, 418 Pa. 319, 211 A.2d 443 (1965); Conner v. Holbert, 49 Tenn.App. 319, 354 S.W.2d 809 (1961); Hamblin v. Marchant, 103 Kan. 508, 175 P. 678 (1918).
We find support for our conclusion that L.S.A.-C.C. art. 966 is to be interpreted literally in an analogous case dealing with life insurance proceeds. In re Hamilton, 446 So.2d 463 (La.App. 4th Cir.1984), writ denied 448 So.2d 105 (La.1984). L.S.A.R.S. 22:613(D) excluded from benefiting under a policy anyone who was “criminally responsible” for the death of the insured. The beneficiary pleaded guilty to manslaughter but argued that hers was a non-intentional killing. The court noted that one could be criminally responsible for a death not intentionally caused.
When Joann Hamilton pled guilty to manslaughter she admitted criminal responsibility for Mr. Hamilton’s death, notwithstanding her contention that she did not intend to kill him. There is no doubt that Joann Hamilton’s intentional assault on Mr. Hamilton contributed to his death. The statute does not require more than a finding by a court of competent jurisdiction that the beneficiary was criminally responsible for the death of the insured. At 446 So.2d p. 465.
We therefore hold that when a party has been found guilty by a jury or judge, or has pleaded guilty to the crime of manslaughter, that is a conviction of killing which precludes inheritance from the deceased. Rick is consequently adjudged to be unworthy and is divested of any interest in his mother’s succession.
We also hold that Rick, being deprived of his mother’s succession, is not an “interested person” with standing to question the administration of this succession. L.S.A.-C.C.P. art. 3334.
Rick is to pay costs of this appeal.
AFFIRMED.

. "Homicide is the killing of a human being by the act, procurement, or culpable omission of another.” L.S.A.-R.S. 14:29.