378 A.2d 1182

In re ESTATE of Agnes Shea KLEIN.

Appeal of Estate of Agnes Shea Klein, Deceased, by its Executrix, Marlene Shea Indovina.

No. 119.

Supreme Court of Pennsylvania.

Argued March 10, 1977.

Decided Oct. 7, 1977.

Anthony J. Martin, Monroeville, for appellant.

Frank C. Rayburn, John J. Klein, Pittsburgh, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

Agnes Shea Klein (decedent) died in an automobile accident on November 1, 1972. Her husband, Albert B. Klein (appellee), the driver of the vehicle in which she was riding, was subsequently charged and convicted for the involuntary manslaughter of decedent.[1]

On November 22, 1972, decedent's will was admitted to probate and letters testamentary were issued to decedent's

---

1. Appellee was also charged with but acquitted of drunken driving.

daughter, Marlene Shea Indovina (appellant), the executrix of the estate. By the terms of the will, Marlene Shea Indovina was to receive three parcels of real estate, certain government bonds and $10,000.00 in cash. The residue of the estate was left to appellee.[2]

On May 20, 1974, appellant filed an inventory of the assets of the estate.[3] On July 1, 1974, appellee filed an election to take against the will.[4] Appellant then filed a "petition to revoke and vacate" the election on the ground that appellee was barred from sharing in the estate by the Slayer's Act.[5] Appellee later claimed the family exemption of $1,500.00.[6]

**2.** The will provided in pertinent part:

"*FIRST*: I direct that all of my just debts and funeral expenses be paid as soon as may be conveniently done after my demise.

*SECOND*: I hereby devise to my beloved daughter, MARLENE SHEA INDOVINA my home at 539 Dendron Drive, Robinson Township, Pennsylvania, also my home known as Sheadyrest Cottage, Francis Drive, Geneva, Ohio, and my home at 1955 Federal Street Extension, Pittsburgh, Allegheny County, Pennsylvania.

*THIRD*: I hereby bequeath to my beloved daughter, MARLENE SHEA INDOVINA, my United States Government Series 'E' Bonds previously held by myself and my daughter's father, Aleck J. Shea, Deceased.

*FOURTH*: I hereby bequeath to my beloved daughter, MARLENE SHEA INDOVINA Ten Thousand ($10,000.00) Dollars.

*FIFTH*: All the rest, residue and remainder of my estate, of whatsoever nature and kind, whether real, personal or mixed, I hereby give, devise and bequeath to my husband, ALBERT B. KLEIN.

*SIXTH*: I hereby nominate, constitute and appoint my daughter, MARLENE SHEA INDOVINA, as Executrix of this my Last Will and Testament, she to serve without bond."

**3.** The inventory listed the following assets: U.S. Savings bonds worth $9,577.43; proceeds from the settlement of a survival action brought by the estate against appellee in the amount of $8,025.00; and the three parcels of real estate mentioned in the will. As the Orphans' Court observed, it was apparent after the inventory was filed that if the estate were distributed according to the terms of the will there would be no residue and appellee would therefore not share in the estate.

**4.** See 20 Pa.C.S.A. § 2508 (1975).

**5.** See id. §§ 2509(c), 8801–15.

**6.** See Act of June 30, 1972, P.L. 508, § 2. In 1974, the family exemption was increased to $2,000.00. See 20 Pa.C.S.A. § 3121 (1975).

On October 28, 1974, appellee filed a petition to recover from the estate funds which were formerly on deposit in two bank accounts in the names of Albert Klein or Agnes Klein. Appellee alleged that decedent had withdrawn the funds from the two accounts without his knowledge or consent and had deposited the proceeds in two new accounts in the name of Agnes Klein, in trust for Phillip and Michelle Indovina.

A hearing on these petitions was held on September 30, and October 1, 1975. During this hearing, appellant also contended that the proceeds received by appellee as beneficiary of decedent's life insurance policies should be returned to the estate pursuant to the Slayer's Act.[7]

The Orphans' Court: (1) denied appellee's petition to take against the will;[8] (2) allowed appellee's application for the family exemption; (3) granted appellee a share of the joint bank accounts; and (4) declined to rule on the merits of the estate's attempt to recover the proceeds of the insurance policies.[9] Appellee filed no exceptions to the court's decree. Appellant filed exceptions which were dismissed by the court en banc on March 17, 1976. This appeal followed.[10] We affirm.

## I

Section 8802 of the Decedents, Estates and Fiduciaries Code provides:

"No slayer shall in any way acquire any property or receive any benefit as the result of the death of the

7. See 20 Pa.C.S.A. § 8811 (1975).

8. The court held that the election was not timely. See id. § 2511. Appellee has not appealed the court's ruling.

9. The court stated in its opinion:
 "[W]e will not here consider the question of insurance proceeds since it was not raised prior to trial. . . . Therefore, this opinion and order attached hereto cannot be considered as a ruling one way or other on this issue."

10. We hear this appeal pursuant to the Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, art. II, § 202(3), 17 P.S. § 211.202(3) (Supp.1977).

decedent, but such property shall pass as provided in the sections following."

20 Pa.C.S.A. § 8802 (1975).[11] Section 8803 provides:

"The slayer shall be deemed to have predeceased the decedent as to property which would have passed from the decedent or his estate to the slayer under the statutes of descent and distribution or have been acquired by dower, by curtesy or by statutory right as surviving spouse."

Id. § 8803.[12] The Code defines a slayer as

"any person who participates, either as a principal or as an accessory before the fact, in the wilful and unlawful killing of any other person."

Id. § 8801.

The Orphans' Court held that appellee's conviction for involuntary manslaughter did not conclusively bar him from sharing in the estate. The Slayer's Act requires that the killing be "wilful and unlawful" to bar inheritance. Id. § 8801. Appellant argues that the court erred in concluding that involuntary manslaughter does not constitute a "wilful" killing.[13]

**11.** 20 Pa.C.S.A. § 8815 (1975) provides that the provisions of the Slayer's Act "shall be construed broadly in order to effect the policy of this State that no person shall be allowed to profit by his own wrong, wherever committed."

**12.** Accord, id. § 2509(c): "Any surviving spouse who participates either as a principal or as an accessory before the fact in the wilful and unlawful killing of the testator shall have no right of election."

**13.** If appellant's argument is correct, appellee's conviction would be a conclusive bar to his right to share in decedent's estate. See *Kravitz Estate*, 418 Pa. 319, 211 A.2d 443 (1965). In *Kravitz*, this Court held that the record of a conviction for murder was a conclusive bar to Mrs. Kravitz's right to take under or against her husband's will. *Kravitz* followed the principle that when a criminal conviction is introduced in a civil proceeding, it conclusively establishes in the civil proceeding those facts logically necessary to the conviction. See generally *Hurtt v. Stirone*, 416 Pa. 493, 206 A.2d 624 (1965). Implicit in our holding in *Kravitz* is the conclusion that the facts which must be proved to establish the elements of the crime of murder in a criminal proceeding also establish that a killing is "wilful and unlawful" under the Slayer's Act. Appellant suggests that the same is true of the crime of involuntary manslaughter.

Our task is to determine what kind of culpability the Legislature intended to encompass by the use of the word "wilful" in the Slayer's Act. We conclude that the Legislature did not intend that a conviction for involuntary manslaughter should conclusively bar an individual from sharing in the victim's estate.

We have previously recognized that the term wilful "is a word of many meanings, depending on the context in which it is used." *Commonwealth ex rel. Wright v. Hendrick*, 455 Pa. 36, 40, 312 A.2d 402, 404 (1973). In various contexts, wilful has been interpreted to mean "intentional," [14] "deliberate and intentional," [15] and has been said to suggest "the presence of intention and at least some power of choice." [16] We believe that in employing the expression a "wilful" killing in the Slayer's Act, the Legislature intended to designate a higher degree of culpability than that required for involuntary manslaughter.

Under the Penal Code, involuntary manslaughter was defined as a death "happening in consequence of an unlawful act, or the doing of a lawful act in an unlawful way." [17] When a death resulted from an act lawful in itself but done in an unlawful way, the Commonwealth had to present evidence establishing "a departure from the behavior of an ordinary and prudent man as to evidence a disregard of human life or an indifference to the consequences," in order to sustain a conviction for involuntary manslaughter. *Commonwealth v. Feinberg*, 433 Pa. 558, 566, 253 A.2d 636,

14. *Commonwealth ex rel. Wright v. Hendrick*, 455 Pa. 36, 40, 312 A.2d 402, 404 (1973).

15. *Rapoport v. Sirott*, 418 Pa. 50, 58, 209 A.2d 421, 424 (1965).

16. *Lucciola v. Commonwealth, Secretary of Education*, 25 Pa. Cmwlth. 419, 420, 360 A.2d 310, 311 (1976), quoting *Sinton's Case*, 151 Pa.Super. 543, 548, 30 A.2d 628, 630 (1943).

17. Act of June 24, 1939, P.L. 872, § 703, formerly codified in 18 P.S. § 4703, repealed, Act of December 6, 1972, P.L. 1482, § 5. Involuntary manslaughter is presently defined at 18 Pa.C.S.A. § 2504 (1973). See note 18, infra.

640–41 (1969).[18] Thus, a conviction for involuntary manslaughter does not require that the killing be committed intentionally or with malice. Of the various degrees of unlawful killings, involuntary manslaughter requires the lowest degree of culpability. We conclude that by requiring that a killing be "wilful," the Legislature intended to exclude involuntary manslaughter from the scope of the Slayer's Act. Indeed, any other conclusion would render the word "wilful" surplusage as all unlawful killings would then be covered by the Slayer's Act.

Our conclusion is buttressed by the circumstances surrounding the adoption of the Slayer's Act. The present statute was adopted in response to a decision of this Court which held that under the prior statute a criminal conviction was necessary before an individual would be barred by the Slayer's Act from inheriting from the victim's estate. *Tarlo's Estate*, 315 Pa. 321, 172 A. 139 (1934). At the time *Tarlo's Estate* was decided, the Slayer's Act barred recovery by any

> "person who shall be finally adjudged guilty, either as principal or accessory, of murder of the first or second degree . . . ."[19]

The statute was held inapplicable in *Tarlo's Estate* because although Tarlo had intentionally killed his wife, he immediately thereafter committed suicide and therefore was never brought to trial.

After *Tarlo's Estate*, the Legislature amended the Slayer's Act. The requirement that a conviction precede application of the Act was eliminated and the Legislature adopted a definition of "slayer" substantially the same as the definition proposed by Professor Wade. See Wade, Acquisition of

18. Under the new Crimes Code, a person is guilty of involuntary manslaughter

> "when as a direct result of the doing of an unlawful act in a reckless or grossly negligent manner, or the doing of a lawful act in a reckless or grossly negligent manner, he causes the death of another person."

18 Pa.C.S.A. § 2504 (1973).

19. Act of June 7, 1917, P.L. 429, § 23, amended, Act of August 5, 1941; P.L. 816, § 1, presently codified in 20 Pa.C.S.A. § 8801 (1975).

Property By Wilfully Killing Another—A Statutory Solution, 49 Harv.L.Rev. 715 (1936); [20] *Larendon Estate*, 439 Pa. 535, 538, 266 A.2d 763, 765 (1970). In the commentary to his proposed statute, Professor Wade stated that involuntary manslaughter should not be considered a wilful and unlawful killing:

> "Should a statute of this sort include manslaughter? . . [I]t is believed it should not if the killing is involuntary. If the wrong was not intentional, it is difficult to say as a matter of policy that the perpetrator should be prohibited from acquiring property."

Id. at 722 (footnotes omitted). The history of the Slayer's Act in Pennsylvania suggests that the language adopted in the present version of the Slayer's Act was not intended to encompass involuntary manslaughter.

We therefore hold that involuntary manslaughter is not a wilful killing within the meaning of the Slayer's Act and that a person convicted of involuntary manslaughter is not conclusively barred from sharing in the victim's estate.[21]

**20.** "[T]he term 'slayer' shall mean any person who wilfully and unlawfully takes or procures to be taken the life of another . . ." 49 Harv.L.Rev. at 721–22.

**21.** Nothing in our holding today is meant to undermine our decision in *Kravitz Estate*, supra, where we held that an individual who has been convicted of murder is barred by the Slayer's Act from sharing in the victim's estate. We recognize that a killing may constitute murder even if it was not committed intentionally. The essential element distinguishing murder from involuntary manslaughter is the state of mind of malice. See *Commonwealth v. Thompson*, 466 Pa. 15, 351 A.2d 280 (1976); *Commonwealth v. Boyd*, 461 Pa. 17, 334 A.2d 610 (1975). Malice may be found if a killing is committed with an intent to kill or with an intent to inflict serious bodily harm. Malice may also be found even if the killing was not intentional, where the perpetrator "consciously disregarded an unjustified and extremely high risk that his actions might cause death or serious bodily harm . . . ." *Commonwealth v. Taylor*, 461 Pa. 557, 565–66, 337 A.2d 545, 549 (1975) (concurring opinion of Roberts, J., joined by Jones, C. J., Eagen, J., and Manderino, J.); accord, *Commonwealth v. Boyd*, 461 Pa. at 22–23, 334 A.2d at 613. However, the high degree of recklessness which may permit a factfinder to conclude that an unintentional killing constituted murder involves a greater degree of culpability than the recklessness or gross negligence which forms the basis of involuntary manslaughter. See

Appellant next asserts that the Orphans' Court, which made its own determination whether appellee had committed a wilful and unlawful killing even though appellee had only been convicted of involuntary manslaughter,[22] erred in finding that the killing was not wilful. We do not agree.

generally *Commonwealth v. Garcia,* 474 Pa. 449, 378 A.2d 1199 (1977) (plurality opinion). We believe that the different degree of culpability between murder and involuntary manslaughter justifies different treatment under the Slayer's Act and reaffirm our holding in *Kravitz Estate* that the record of a murder conviction conclusively establishes a wilful and unlawful killing under the Slayer's Act. In effect, a killing is wilful under the Slayer's Act if it is committed intentionally or with malice.

**22.** The trial court reasoned:

"The *Kravitz* case holds that a conviction of murder is conclusive that the slayer may not share in the estate of his victim but the converse is not true, i. e., one acquitted of the homicide may still be denied a share in the estate of the victim. The measure of proof in a homicide case is 'beyond a reasonable doubt.' In a civil case it is the 'fair weight of the evidence.' Thus, an accused may be acquitted of homicide on the ground that the evidence did not prove his guilt beyond a reasonable doubt, and yet be denied a share of the victim's estate for the reason that the fair weight of the evidence proves him to be a wilful killer. Here Albert Klein was not even accused of the offense of wilful murder."

Appellant seizes upon the last sentence of this passage and asserts that the court, in effect, denied her the right to prove that decedent's death resulted from a wilful killing. Appellant argues that the court "was erroneously assuming that since the Grand Jury declined to accuse [appellee] of violating a criminal statute," appellee could not come within the terms of the Slayer's Act.

We are convinced that appellant has misread the Orphans' Court opinion. In this passage, the court asserted that it has the power to relitigate an individual's culpability even after he has been acquitted of an offense which would disqualify him under the terms of the Slayer's Act, from receiving property from the victim's estate. By stating that appellee had not even been accused of wilful murder, the court was indicating that if it has the power to relitigate after an acquittal, a fortiori it has the power to decide the issue where an individual has never been tried for the offense. Moreover, other parts of the court's opinion indicate that the criminal proceedings were not considered conclusive; rather, appellant simply failed to meet her burden of proof. See note 23, infra.

In the present context, we are not called upon to decide whether the Orphans' Court was correct in asserting that it has the power to relitigate the culpability of an individual who has been acquitted of a criminal charge. First, there has been no previous acquittal since appellee was never tried for an offense for which a conviction would conclusively bar him from sharing in decedent's estate. Second,

 The only evidence introduced at the hearing relative to the circumstances surrounding decedent's death was appellee's testimony. According to appellee, he and decedent attended a party at the Greater Pittsburgh Airport in Allegheny County on November 4, 1972. He left the party with decedent and a friend, Mrs. Redd. Appellee stated that he could remember nothing from the time he left the airport parking lot until after the accident. He later learned that he drove his car on the wrong side of the highway leading from the airport. After traveling on the highway for about two or three miles, appellee's automobile collided with a truck. He was hospitalized for five months as a result of the injuries he received in the accident. Decedent was killed and Mrs. Redd sustained serious injuries.

Appellant asserts that the evidence established that appellee's actions were wilful and unlawful. Even if the evidence could support a finding that appellee's culpability constituted wilfulness, the Orphans' Court found that appellee's actions were not wilful.[23] In reviewing the decision of the orphans' court, this Court's responsibility is to assure that the record is free from legal error and to determine if the orphans' court's findings are supported by competent and adequate evidence. E. g., *In re Estate of Cohen*, 445 Pa. 549, 284 A.2d 754 (1971). This Court is bound by the orphans' court's findings of fact if they are supported by the record. See *Brentwater Homes, Inc. v. Weibley*, 471 Pa. 17, 369 A.2d 1172 (1977). After reviewing the record, we conclude that the Orphans' Court's determination that decedent's death did not result from a wilful killing is supported by the record and should not be disturbed.

appellant failed to prove in the civil proceedings that the killing was wilful.

**23.** The court stated:
"The only evidence on the issue of his culpability is his testimony to the effect that he was unaware of his actions at the time of the accident. The record will not support a finding that he was a 'slayer' and the statute does not bar him from sharing in his wife's estate."

Finally, appellant asserts that the record is inadequate for a determination whether the killing was wilful and requests that this Court remand the case with instructions for a more complete evidentiary hearing. However, the very purpose of the hearing which was held by the Orphans' Court was to determine whether appellee was entitled to share in decedent's estate. Appellant asserted before the court that appellee's claims in the estate were barred by the Slayer's Act. Nothing in the record indicates that appellant was limited in any way from establishing that appellee had wilfully killed decedent. We reject appellant's request for a second bite at the apple.[24]

## II

Appellant asserts that the Orphans' Court erred in allowing appellee to recover from the estate one half of the amount of money formerly held in two bank accounts in the names of Albert Klein or Agnes Klein. The facts relevant to this issue are not disputed.

Appellee and decedent were married on August 22, 1970. On January 7, 1971, decedent withdrew $5,413.88 from a savings account in her name at the Penn Hills branch of the Western Pennsylvania National Bank and deposited the money in a growth account at the Kenmawr branch of the same bank in the names of Albert Klein or Agnes Klein. On the same day, decedent withdrew $7,872.12 from another savings account in her name at the Penn Hills branch and deposited the money in a savings account at the Kenmawr branch in the names of Albert Klein or Agnes Klein.

---

24. Appellant also argues that the Orphans' Court improperly refused to determine whether the estate was entitled to recover from appellee the proceeds he collected as beneficiary of decedent's life insurance policies. The only basis for appellant's claim to the proceeds is the Slayer's Act. Thus, even if the Orphans' Court should have reached the issue, appellant has not been prejudiced. Had the court reached the merits, its determination that appellee was not a "slayer" would also have negated appellant's claim for the insurance proceeds. Since we have affirmed the court's ruling that the Slayer's Act does not apply to appellee, appellant suffered no harm when the Orphans' Court declined to decide the insurance proceeds claim.

On August 13, 1971, decedent closed both accounts she had established on January 7. At the time, there was $5,542.17 in the growth account and $4,777.50 in the savings account.[25] On the same day, she created two tentative trust accounts entitled: "Mrs. Agnes Klein in trust for Phillip and Michelle Indovina," into which she deposited the $5,542.17 and $4,777.50 respectively. Appellee testified that he did not learn that decedent closed the growth and savings accounts until he was in the hospital following the automobile accident which resulted in decedent's death.

The Orphans' Court ruled that the creation of the joint accounts in the names of appellee and decedent established a tenancy by the entireties. The court then decided that appellee was entitled to one half of the funds held in the accounts.[26]

■ Appellant contends that a tenancy by the entireties was not created when decedent established a joint account with her husband with funds which formerly belonged to decedent alone. Appellant argues that when a wife places her sole property in joint names with her husband a gift is not presumed, but rather the husband is viewed as holding

25. The growth account had accumulated interest. The savings account had been reduced by a withdrawal of approximately $3,100.00. The record does not indicate whether decedent or appellee withdrew the money. Appellee testified that the withdrawal was used as a down payment for the purchase of an automobile for him and decedent.

26. The trial court stated:
"When one spouse appropriates the funds for his or her own benefit this amounts to an offer to partition the fund which the other spouse may accept by making demand for one-half the balance. . . . In the case at bar [decedent's] withdrawal of the funds on August 13, 1971 constituted an offer to sever the joint tenancies and to divide the proceeds. [Appellee] accepted this offer by his demand of one-half of the balances."
The record indicates that in the Orphans' Court appellee sought all the money which he jointly held with decedent. See *Cohen v. Goldberg*, 431 Pa. 192, 244 A.2d 763 (1968) (doctrine recognizing fictional offer to terminate estate by the entireties and fictional acceptance does not apply if acceptance occurred after offeror's death). However, appellee has not appealed from the Orphans' Court's decision to direct appellant to pay appellee only one half the sum held in the joint accounts.

the property as trustee of a resulting trust for the wife. This argument misapprehends the law.

In *Cohen v. Goldberg*, 431 Pa. 192, 244 A.2d 763 (1968), this Court stated that absent evidence of a contrary intent,[27] a deposit in a banking account or a savings account which is opened or registered in the name of a husband and wife or a husband or wife creates a tenancy by the entireties. Id. 431 Pa. at 195, 244 A.2d at 765.

Appellant relies on *Shapiro v. Shapiro*, 424 Pa. 120, 224 A.2d 164 (1966), for the proposition that the presumptions which arise when property is placed in joint names "depend on which spouse was the donor." [28] Appellant fails to note that *Shapiro* has been overruled. The differing presumptions based on sex which were employed in that case "can no longer stand in view of the passage of the Pennsylvania Equal Rights Amendment, Pa.Const. Art. I, § 28 (adopted May 28, 1971) . . . ." *Butler v. Butler*, 464 Pa. 522, 527, 347 A.2d 477, 480 (1975). In *Butler*, this Court abandoned the presumption that a transfer without consideration from a wife to her husband creates a trust for the wife in favor of the presumption that interspousal transfers are gifts regardless which spouse is the donor:

"[I]n a marital relationship a gift to entireties property is presumed for contributions made by either husband or wife. A constructive trust will be imposed only when it

---

**27.** The creation of an account in the names of the husband and wife does not conclusively establish a tenancy by the entireties. "[I]ntention is the cardinal and controlling element and if it is the intention of the parties to create an estate other than by entireties, such intention will be given effect . . . ." *Brenner v. Sukenik*, 410 Pa. 324, 330, 189 A.2d 246, 249 (1963).

**28.** In *Shapiro*, the Court noted that while a transfer of property by a husband to his wife without consideration creates the presumption that a gift was intended, 424 Pa. at 129, 224 A.2d at 169, a transfer from a wife to her husband alone creates a rebuttable presumption that a trust was created in favor of the wife, id. 424 Pa. at 133, 224 A.2d at 171. The Court then concluded that the presumption that a trust is created in favor of the wife is proper regardless whether the transfer was from the wife to the husband alone or was from the wife to the husband and wife as tenants by the entireties. Id. at 133–34, 224 A.2d at 171–72 (alternative holding).

appears that the parties are in fact in a confidential relationship with one party enjoying an advantage over the other because of superior knowledge or influence and that this domination caused a gift to entireties property to arise."

464 Pa. at 529, 347 A.2d at 481; accord, *Yohe v. Yohe*, 466 Pa. 405, 410–11, 353 A.2d 417, 420 (1976).

We reject appellant's claim that the Orphans' Court applied an incorrect presumption to the facts of this case. Accordingly, there is no basis for disturbing the court's adjudication that decedent created a tenancy by the entireties when she established bank accounts in the names of Albert Klein or Agnes Klein on January 7, 1971.

Decree affirmed.

Each party pay own costs.