## Jackson Estate

*Arthur S. Cavaliere,* for executrix and accountant.

*Richard M. Gillis Jr.,* guardian ad litem.

SHOYER, *J.,* March 26, 1987 — The testator died December 20, 1983, leaving a will dated December 9, 1982, which was duly probated on January 6,

1984. Letters testamentary were granted to Joan E. Francia, decedent's daughter and accountant herein. Proof of publication of the grant thereof was submitted to the auditing judge.

The statement of proposed distribution states that the testator was not survived by a spouse, but was survived by the accountant and a son, David Jackson Jr.

By his will, testator bequeathed his entire estate to his daughter, Joan E. Francia.

All parties in interest appear to have had written notice of the audit of this account by letter mailed April 11, 1986.

Payments of Pennsylvania Transfer Inheritance Tax in the amount of $2,600 on November 9, 1984, $121.95 on November 6, 1985 and $4.50 on January 3, 1986 were duly vouched by the production of the official inheritance tax receipts.

On October 15, 1985, the accountant filed a petition for citation under the Slayer's Act (20 Pa.C.S. §8801, et seq.), requesting that a citation be directed to David Jackson Jr., requiring him to show cause why he should not be denied any and all interest in the estate of David Jackson Sr. The petition stated that David Jackson Jr. was found to be guilty but mentally ill of the third-degree murder of his father by Savitt, J. sitting in the criminal trial division of this court on July 12, 1984.

By decree of Pawelec, A.J., dated October 23, 1985, the citation was issued with a direction that the petition and citation be personally served on David Jackson Jr., an in-patient at Farview State Hospital. The required service was made and no answer was filed. A petition for a default order was then filed by the accountant on February 6, 1986.

By decree of Pawelec, A.J., dated February 14, 1986, the accountant was ordered to file an account

of her administration and all issues raised by the pleadings were referred to the auditing judge for disposition.

The account was filed on March 27, 1986 and was called for audit before the undersigned on May 5, 1986. Counsel for the accountant appeared at the audit and stated there were no questions raised for adjudication.

Upon review of the matter, the auditing judge required that the accountant appear on September 15, 1986 and bring with her any letters she received from her brother, David Jackson Jr. since his placement at Farview State Hospital. Since the approximately 45 letters so submitted gave no indication that David Jackson Jr. understands the nature of the proceedings before this court, the auditing judge by decree dated November 7, 1986, appointed Richard M. Gillis Jr. Esq. as guardian ad litem for David Jackson Jr. to represent him in all matters pertaining to the audit of the first and final account of Joan E. Francia, including the disposition of two non-probate assets.

The key question presented in this case is whether David C. Jackson Jr. is barred by the Slayer's Act (section 8802 of the P.E.F. Code of 1972) from receiving the proceeds of an i.t.f. bank account held in the name of decedent and certain U.S. Savings Bonds held jointly by him and decedent, his father, whom he slew on December 20, 1983. Jackson was convicted of third degree murder, but found mentally ill under a 1982 statute. See Act of December 15, 1982, P.L. 1262, 18 Pa.C.S. §314. What effect does this finding and conviction have upon the application of the Slayer's Act to the facts in this case?

20 Pa.C.S. §8802 provides:

"No slayer shall in any way acuire any property or receive any benefit as the result of the death of the

decedent, but such property shall pass as provided in the sections following."

The definition of "slayer" in section 8801 is as follows:

"Means any person who participates, either as a principal or as an accessory before the fact, in the *willful* and unlawful killing of any other person." (emphasis supplied)

A conviction of murder conclusively establishes a willful and unlawful killing under the Slayer's Act and bars the slayer from sharing in his victim's estate. *Kravitz Estate,* 418 Pa. 319, 211 A.2d 443 (1965). In *Klein's Estate,* 474 Pa. 416, 378 A.2d 1182 (1977), it was held that the definition of willful under the Slayer's Act is a crime which is higher than involuntary manslaughter, accompanied by the presence of intention and at least some power of choice on the part of the slayer and the elimination of the need for conviciton, but a conviciton of *involuntary* manslaughter does not bar a taking by defendant under the act. Acquittal by reason of insanity bars the application of the Slayer's Act. *Gabel Estate,* 27 Fid. Rep. 322 (O.C. Allegheny County 1977); *Cekovich Estate,* 23 Fid. Rep. 1 (O.C. Beaver County 1972).

The record of an acquittal is admissible in an orphans' court proceeding, but is not conclusive and the orphans' court has the power to determine from all of the facts in the case whether the killing was willful and unlawful. *Cekovich, supra; DeMatteo Estate,* 1 Fid. Rep. 2d 57 (O.C. Westmoreland County 1980).

Where then does a conviction of guilty, but mentally ill fit into this hierarchy?

Two cases, *Gabel* and *DeMatteo,* are significantly on point, with opposite results, although there are no cases in Pennsylvania since 1982 interpreting

the act governing Jackson's conviction as it applies to the Slayer's Act. In *Gabel,* there was a finding of not guilty by reason of insanity and that defendant was not barred under the Slayer's Act, because his act was found to be not willful. In *DeMatteo,* the conviction was not guilty by reason of insanity, but the killing was found by the orphans' court to be willful and the Slayer's Act applied because defendant knew the power of her choice in using the gun to kill her victim.

In *Gabel,* a son murdered his father by stabbing him repeatedly with a kitchen knife, after the father told him to take pills. The son, charged with murder, was diagnosed as schizophrenic and was not competent to stand trial. Committed to Farview for more than a year, he recovered enough to stand trial and was found not guilty by reason of insanity. The orphans' court reviewed the record and found that the acts causing the death of his father were not willful, but were irrational and caused by the disease of his mind, that at the time of the crime, he was not capable of performing a willful act, that he was not responsible for his acts resulting in the homicide and that he was not a "slayer" under the act and, therefore, not barred from participating in the enjoyment of his father's trust.

On the other hand, in *DeMatteo* (affirmed by the court en banc, exceptions dismissed), defendant wife shot her husband with a revolver and immediately afterwards she voluntarily admitted herself to a mental health center. Less than two months later, she was committed under section 408 of the Mental Health Act. The conviction of not guilty by reason of insanity was thoroughly reviewed by the orphans' court, all 19 pages of medical testimony, which found it "far from convincing . . . and that her condition was not as serious as the attending doctor at

the hospital originally stated." 27 Fid. Rep. 377, at 379. The court found that the killing — pointing a loaded gun at her husband and pulling the trigger — was willful and intentional, because she knew the destructive power of the gun which she used. The court held her barred under the Slayer's Act.

As in *Klein,* the finding of willfulness had been interpreted to suggest the presence of intention and at least some power of choice.

In the instant case, the criminal court division found that defendant knew the nature of his act, that it was wrong, that it was criminal, that he voluntarily surrendered himself to the police. At trial, no evidence of *major* mental illness in the form of thought impairment was found. The findings are similar to the facts of *DeMatteo.*

The conclusion, therefore, has to be that Jackson could understand the brutality of his acts against his father, that the killing was both willful and unlawful and that he is, therefore, barred by the Slayer's Act from receiving the joint property and i.t.f. bank account of his father.

This result is also supported by the common-law principle that a person will not be permitted to profit by his own wrong, particularly by his own crime, which is also reinforced by the broad policy statement of the Slayer's Act as it is provided in 20 Pa. C.S. §8815.

"This chapter . . . shall be construed broadly in order to effect the policy of this state that no person shall be allowed to profit by his own wrong, wherever committed."

The guardian ad litem submitted his well written and researched report to the auditing judge. The facts of this case are also contained in the report.

The ad litem recommends that the account be confirmed as stated and that the distribution of the

two non-probate assets be as stated in the accountant's petition for adjudication, subject, however, to the right of David Jackson Jr. to partition the jointly-owned asset as provided in 20 Pa.C.S. §8806(a).

The accountant filed a response to the report of the ad litem stating that she approved the report and the amount of the ad litem's fee; however, she disagreed with the ad litem's recommendation that the jointly-owned asset be partitioned and suggested that if the partition is granted, the ad litem's fee should be paid by David Jackson Jr.

The jointly-held asset that is the subject of this disagreement is comprised of 15 U.S. Savings Bonds, Series "E" and "EE." These bonds were owned jointly by decedent and his son. They are valued in the account at $2,993.46.

Section 8806(a) of the Slayer Act (20 Pa.C.S. §8801 et seq.), provides that one-half of any property owned by the slayer and decedent as joint owners shall pass upon the death of the decedent to his estate and the other one-half shall pass to his estate upon the death of the slayer, unless the slayer obtains a separation of the property or a decree granting partition.

The ad litem points out that if the bonds are not partitioned, David Jackson Jr. will have no use of the income from the savings bonds because income cannot be realized from Series "E" Bonds until they are cashed. The accountant's response is that David Jackson Jr. had no right to enjoy income from the bonds prior to the death of decedent and to permit him to partition the bonds would put him into a better position than that which he occupied prior to the death of decedent.

The auditing judge is of the opinion that the bonds should not be partitioned but should be held as directed by the main clause of 20 Pa.C.S.

§8806(a). To do otherwise would indeed put the slayer in a better position than he enjoyed during the lifetime of his father. The auditing judge is also mindful that because of the treatment of the savings bonds under federal tax laws, a partition may create additional tax burden for the estate. Finally, in *Free v. Bland,* 369 U.S. 663, 670 (1962) (dictum), the court stated that, "there is an exception implicit in the savings bonds regulations, including the survivorship provision so that federal bonds will not be a 'sanctuary for wrongdoer's gains.'" A partition would be tantamount to a sanctuary and will not be granted.

By separate decree of even date herewith, the auditing judge hereby directs the distribution of the "in trust for" savings account and the jointly held U.S. Savings Bonds to the estate of David Jackson Sr., as more fully set forth therein.

There were no objections to the account which shows a balance of principal of $6,512.23 from which subtract fee of guardian ad litem $1,000 leaving $5,512.23 which, composed as indicated in the account, together with any income or interest on deposits and subject to all distributions heretofore properly made and subject to any further inheritance tax as the same may be found due, is awarded as follows:

To Joan E. Francia: 100 percent of estate.

Leave is granted to the accountant to make all transfers necessary to effect distribution in accordance with this adjudication.

## ORDER

And now, this March 26, 1987, unless exceptions are filed to this adjudication within 20 days, the account is confirmed absolutely.