## Chase Estate

*Thomas M. James,* for accountant.

BRUNO, *J.*, April 1, 1987—Joan Marie Chase died on June 5, 1983, intestate, survived by her husband, Othello A. Chase, and her son, Michael Edward Chase. On October 9, 1984, letters of administration in her estate were granted to her mother, Rose Anna Buck, by the register of wills of Philadelphia County. Proof of the advertisement of the grant of the letters was submitted and is annexed.

The circumstances surrounding the death of Joan Marie Chase have given rise to a question raised by the accountant concerning the distribution of the assets of the estate. The sole asset of this estate is the net proceeds of a claim filed by the administra-

trix with Metropolitan Insurance Co., the automobile insurance carrier for decedent's husband, alleging negligence on the part of Othello Chase in the operation of his automobile, which resulted in the death of the decedent. As an aside, it is noted that the insurance carrier paid the Dependent Survivor's Benefit of $5,000 to Rose Buck, the decedent's sister, who was appointed guardian of the estate of Michael Edward Chase, a minor, by decree of Judge Klein, dated January 29, 1985. That money has been deposited in a restricted account in accordance with the decree of Judge Klein.

Given the size of this estate, Othello A. Chase, as the surviving spouse, is entitled to the entire fund under the applicable section of the intestate law unless he is otherwise barred from any distribution. The administratrix has taken the position that he should be denied any distribution and requests that the entire fund be awarded to Rose Buck as guardian of the estate of the decedent's son.

She contends that Othello A. Chase is barred from participating in the distribution of his wife's estate under the provisions of the Slayer's Act. In the alternative, she contends that he should be barred from distribution because it would be against public policy and would effect a fraud on the insurance carrier to allow Othello A. Chase to participate in the distribution of this estate since the only asset is the proceeds of a claim brought against him and settled by his carrier.

To fully understand the administratrix' position, it is necessary to review the facts surrounding the death of Joan Marie Chase.

In the early morning hours of June 5, 1983, Joan Marie Chase and Othello A. Chase were patrons in the Deptford Mall Tavern, located in Deptford Township, Gloucester County, N. J. At approxi-

mately 2:00 a.m., Joan Marie Chase telephoned her sister, Rose Buck, in Philadelphia. Rose Buck testified that her sister was calling from a phone in the parking lot of the tavern. Rose Buck testified that she could hear her sister's husband screaming obscenities. Joan Marie Chase told her sister that Othello A. Chase was beating her because he thought that his wife was flirting with the leader of the band that was playing in the tavern that particular evening. As a result of the beatings, the pair was thrown out of the tavern.

Joan Marie Chase telephoned her sister because she wanted her to come to the tavern's parking lot and take her home. Rose Buck told her sister to calm down, try and make up and that everything would be all right.

Approximately one-half hour later, Joan Marie Chase called Rose Buck again. Rose Buck testified that Joan Marie Chase was hysterical and that she told her that Othello A. Chase was still beating her and threatening to walk out on her forever. Joan Marie Chase asked her sister to pick her up in New Jersey and let her live with her. Rose Buck told her sister that she could not leave her daughter alone in Philadelphia and that she should try to get back to Philadelphia as soon as possible. That was the last conversation the sisters had.

Rose Buck further testified that the medical examiner from Deptford Township came to her home in Philadelphia at approximately 5:00 a.m., on June 5, 1983, and requested that she accompany him to the morgue to identify her sister's body.

For reasons which Joan Marie Chase took to the grave with her, she got in the car with her husband and they left the tavern's parking lot. An automobile accident fatal to Joan Marie Chase occurred at Almonesson Road at Timber Creek Bridge. She was

pronounced dead at the scene by Dr. Claus Speth at 4:12 a.m.

The accident report filed by patrolman Edward Johnson, a copy of which is attached to accountant's brief as exhibit A, states that the car driven by Othello A. Chase "was driven by the owner and at the time of the accident was traveling at a very high rate of speed." The report reads as follows:

"The vehicle left the roadway as it traveled northbound on Almonesson Road and traveled 132 feet on the dirt roadside and it came in contact with utility pole no. 60176DP owned by Public Service Electric Co., causing very heavy damage to the vehicle on the right side.

"The vehicle skidded sideways 43'9" more and then it hit the guard rail and rode the guard rail approx. 25' until it was thrown off on a left 45° angle and the vehicle crossed the roadway and it hit the bridge on the southbound side of the roadway 50'9" from the guard rail and it then came to a final rest across the entire southbound lane with the rear of the car facing northeast and on the center line. Both the driver and passenger of the car were thrown out of the vehicle as it left the guard rail and they hit the street and slid on their backs and came to rest side by side behind the vehicle in the northbound lane of travel."

A toxicology analysis report requested by the Deptford Township Police Department performed on samples of Othello A. Chase's blood and urine taken from him at least one hour after the accident, show a blood alcohol level of .151 percent. (see exhibit B of accountant's brief).

Thereafter, by indictment no. I-3747-7-83, the Superior Court of New Jersey, Law Division (Criminal) of Gloucester County, indicted Othello A. Chase charging him with Homicide (Death by

Auto) in violation of N.J.S. Superior Court 2D: 11-5.

On July 3, 1984, Othello A. Chase entered a plea of guilty to the crime and on September 4, 1984, he was sentenced to nine months at the Gloucester County Prison. At the time of the audit of this account, Othello A. Chase was not incarcerated.

Othello A. Chase was notified of the time and place of this audit in accordance with our local rules. That notice letter clearly and plainly explained to Mr. Chase the administratrix' position and advised him to appear in person or by counsel if he objected to the administratrix' position. Mr. Chase did not appear.

The question of whether an intestate heir whose negligence causes the death of a decedent should be permitted to share in the distribution of the decedent's estate when the only asset of the estate is the proceeds of a claim brought by the decedent's administratrix against the insurance carrier of the intestate heir appears to be one of first impression in Pennsylvania.

The administratrix contends that decedent's husband is a slayer within the meaning of the Slayer's Act and is barred from participation. The auditing judge disagrees.

The Slayer's Act, 20 Pa.C.S. §8801, defines a slayer as "any person who participates . . . in the wilful and unlawful killing of any other person." Our Supreme Court has held that a conviction of involuntary manslaughter does not conclusively bar an individual from sharing in the victim's estate. The court reasoned that in using the word "wilful" in the act, the Legislature "intended to designate a higher degree of culpability than that required for involuntary manslaughter." *In re Estate of Klein,* 474 Pa. Super. 416, 378 A.2d 1182 at 1185 (1977).

The Pennsylvania Crimes Code requires a finding of recklessness or gross negligence on the part of the principal in causing the death of another in order to support a conviction of involuntary manslaughter. 18 Pa.C.S. §2504(a). In New Jersey, a conviction of death by auto requires only the reckless driving of an automobile which results in the death of another. N.J.S. Superior Court 2C:11-5. It is apparent, therefore, that the degree of culpability required for a conviction of death by auto is significantly lower than required for a conviction of involuntary manslaughter.

Accordingly, Othello A. Chase's conviction of death by auto does not conclusively bar him from a distribution in his wife's estate.

Of course, this court has the inherent authority to determine whether he committed a wilful and unlawful killing even though he was convicted of a crime in which wilfulness is not an element. *In Re Estate of Klein,* supra. However, the evidence offered at the hearing does not show a wilful killing. There is nothing in this record which would support a finding that Othello A. Chase is a slayer within the meaning of the Slayer's Act and thereby barred from a distribution in his wife's estate.

In the alternative, the administratrix contends that an award to Othello A. Chase would effect a fraud on the insurance company and therefore he should be barred for reasons of public policy.

The auditing judge does not agree that a distribution would effect a fraud on the insurance carrier. Fraud is not an element in this case. Othello A. Chase did not procure automobile insurance solely to create a fund which would become his after he killed his wife. Quite the contrary, through a thoroughly random set of occurrences he finds himself the heir at law of the woman whose death he

caused. This entire case is tragic. However, it is not fraudulent.

Nonetheless, the auditing judge cannot ignore the fact that Othello A. Chase caused his wife's death. Under the circumstances of this case the auditing judge is of the opinion that Othello A. Chase would be unjustly enriched if he were permitted to participate in his wife's estate.

The elements necessary to sustain a claim of unjust enrichment have most recently been stated in the Superior Court's opinion in *Torchia on behalf of Torchia v. Torchia,* 346 Pa. Super. 229, 499 A.2d 581 at 582 1985, wherein it is stated:

" . . . a claimant must show that the party against whom recovery is sought either wrongfully secured or passively received a benefit that would be unconscionable for her to retain. *Roman Mosaic & Tile Co. v. Vollrath,* 226 Pa. Super, 215, 218, 313 A.2d 305, 307 (1973). In order to recover, there must be *both* (1) an enrichment, and (2) an injustice resulting if recovery for the enrichment is denied. *Samuels v. Hendricks,* 300 Pa. Super. 11, 14-15 445 A.2d 1273, 1275 (1982) (emphasis in original), quoting *Meehan v. Cheltenham Township,* 410 Pa. 446, 449, 189 A.2d 593, 595 (1963). A showing of knowledge or wrongful intent on the part of the benefited party is not necessary in order to show unjust enrichment. Rather, the focus is on the resultant unjust enrichment, not on the party's intention. *Crossgates Realty Inc., v. Moore,* 279 Pa. Super. 247, 252, 420 A.2d 1125, 1128 (1980)."

In the instant case, it cannot be denied that there would be an enrichment were Othello A. Chase to inherit through his wife. Nor can it be denied that the enrichment would be unjust. All talk of degrees of culpability aside, the plain truth is that Othello A. Chase caused the death of his wife. The auditing

judge cannot in good conscience permit him to passively receive a benefit which arises because of the death of his wife which he caused. Fundamental notions of decency and justice demand that he not profit from his tortious conduct.

Accordingly, I find that Othello A. Chase is barred from participating in his wife's estate. Therefore, the balances of principal and income shown in the account will be awarded to the guardian of the estate of the minor child of Joan. Marie Chase.

There were no objections to the account, which shows a balance of principal of $15,800.68 which, composed as indicated, is awarded, less additional disbursements of $45.24 (see appearance slip of counsel) together with a balance of income of $499.28 and with any additional interest and collections on deposit to the time of actual distribution, to Rose Buck, guardian of the estate of Michael Edward Chase, a minor. The guardian is hereby directed to obtain an order from the appointing judge prior to receipt of the funds, the said order directing her to deposit the funds in an account in accordance with local rules.

The above awards are subject to all payments properly made on account of distribution.

Payment and distribution is so decreed, with leave to the accountant to make any and all necessary transfers and assignments.

And now April 1, 1987, unless exceptions are filed to this adjudication within 20 days, the adjudication is absolute.