J-A29020-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: CAROL SHINER ROSENBLOOM, AN INCAPACITATED PERSON | : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: MARGIE HAMMER | : : : : : | |
| | : | No. 464 WDA 2019 |

Appeal from the Order Entered, March 1, 2019,
in the Court of Common Pleas of Allegheny County,
Orphans' Court at No(s):  No. 02-16-04661.

BEFORE:   BENDER, P.J.E., KUNSELMAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY KUNSELMAN, J.:               **FILED FEBRUARY 14, 2020**

Margie Hammer, Esq., appeals part of the orphans' court order, directing her to pay $65,000 into the Estate of Carol Shiner Rosenbloom, Esq., an incapacitated person[1] and former client of Attorney Hammer.  An orphans' court has no authority under the Probate, Estates, and Fiduciaries Code ("PEFC")[2] to force a person to give money to an estate, if, as here, the money does not belong to the estate.  We therefore reverse.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] "'Incapacitated person'" means an adult whose ability to receive and evaluate information effectively and communicate decisions in any way is impaired to such a significant extent that he is partially or totally unable to manage his financial resources or to meet essential requirements for his physical health and safety."  20 Pa.C.S.A. § 5501.

[2] 20 Pa.C.S.A. §§ 101-8815.

This guardianship matter began August 22, 2016, when Dr. Richard Rosenbloom petitioned the Orphans' Court of Allegheny County to have Ms. Rosenbloom, his wife, adjudged an incapacitated person. The court granted Dr. Rosenbloom's request two months later. It simultaneously appointed Aligned Partners Trust Company ("the Guardian") the plenary guardian of Ms. Rosenbloom's estate.[3]

The Guardian subsequently petitioned to invalidate certain gifts that Ms. Rosenbloom had given to the Rosenblooms' daughter, Kate, in the summer of 2016. Ms. Rosenbloom gave Kate title to a home and certain investment accounts worth $283,000. The court found that Kate exerted undue influence over Ms. Rosenbloom and negated the transfer of the $283,000 accounts to Kate. However, it refused the Guardian's request to negate Ms. Rosenbloom's gift of the Hartwood Drive home to Kate, because the orphans' court found that Ms. Rosenbloom had wanted to give that home to Kate despite any undue influence.[4]

At the hearing regarding Ms. Rosenbloom's capacity and her gifts to Kate, the Guardian learned from Attorney Hammer's testimony that Attorney Hammer had performed legal work for Kate and Ms. Rosenbloom during 2016.

---

[3] Several other individuals and agencies have served as limited guardians of Ms. Rosenbloom's person. Their identities are irrelevant to the disposition of this appeal.

[4] Dr. Rosenbloom contested the transfer of the house to Kate in a separate appeal. Kate did not appeal the portion of the order directing her to return $283,000 to the estate.

The orphans' court found that Attorney Hammer prepared documents at Ms. Rosenbloom's request to transfer the home and accounts to Kate. Attorney Hammer also had represented Kate in her divorce.

Attorney Hammer testified that every payment she received for her legal services to both Kate and Ms. Rosenbloom came from Kate. Even so, the orphans' court found that the money Kate used to pay Attorney Hammer originated from the $283,000 that Kate received from Ms. Rosenbloom. The orphans' court therefore ordered Attorney Hammer to forfeit that money to the estate.

The orphans' court entered its order regarding Attorney Hammer's fees and the Hartwood Drive home on March 1, 2019. Attorney Hammer appealed on April 1, 2019.

She asserts four grounds of error regarding the orphans' court decree directing her to pay $65,000 into Ms. Rosenbloom's estate. Before addressing those claims, we first consider the Guardian's assertion that Attorney Hammer's appeal is premature.

1.    Attorney Hammer's Appeal Is of Right

The Guardian contends that Attorney Hammer's appeal is interlocutory in nature. According to the Guardian, the orphans' court merely directed Attorney Hammer to refund $65,000 to the estate, because she "was paid with funds belonging to [Ms. Rosenbloom] without receiving authorization from [the orphans' court].'" Guardian's Brief at 14 (*quoting* Orphans' Court

Opinion, 5/20/19, at 7). The Guardian provides no argument to support its claim that Attorney Hammer's appeal is interlocutory, nor does it explain what further proceeding Attorney Hammer needed to pursue in the orphans' court before the order in question would become appealable.

Although the Guardian does not directly say so, we infer that it believes this Court does not yet have appellate jurisdiction over Attorney Hammer's appeal. "Jurisdiction is purely a question of law; the appellate standard of review is *de novo*, and the scope of review plenary." **Barak v. Karolizki**, 196 A.3d 208, 215 (Pa.Super. 2018).

An appellate court "has jurisdiction to entertain appeals taken (1) as of right from a final order; (2) from interlocutory orders by permission; (3) from certain interlocutory orders as of right; and (4) from certain collateral orders." **Redevelopment Auth. of Cambria City v. Int'l Ins. Co.**, 685 A.2d 581, 585 (Pa.Super. 1996) (citations omitted). "An order is final if it disposes of all claims and all parties, and an order is interlocutory when it does not effectively put a litigant out of court." **Koken v. Colonial Assurance Co.**, 885 A.2d 1078, 1101 (Pa.Cmwlth. 2005) (citation omitted), *affirmed* per curiam, 893 A.2d 98 (Pa. 2006).

We need not resolve whether the order in question was interlocutory, because, even if it was, Attorney Hammer could immediately appeal it as of right. "An appeal may be taken **as of right** from the following orders of the Orphans' Court Division . . . (5) an order determining the status of . . .

- 4 -

creditors in an estate, trust, or guardianship . . . ." Pa.R.A.P. 342(a) (emphasis added). The orphans' court found that Attorney Hammer had wrongfully acquired funds belonging to Ms. Rosenbloom. The court therefore determined Attorney Hammer's status to be an unlawful creditor of the estate. Accordingly, Attorney Hammer could immediately appeal as of right under Pa.R.A.P. 342(a)(5).

We have jurisdiction to hear appeals from "interlocutory orders as of right . . . ." **Redevelopment Auth. of Cambria City**, **supra**. We are thus satisfied that appellate jurisdiction over Attorney Hammer's appeal has vested in this Court. Accordingly, we may reach the merits of her appeal.

2.      Application of the PEFC, Section 5536(a)

Attorney Hammer raises four claims of error regarding the decree of the orphans' court. They are:

1.      Did the court err in applying 20 Pa.C.S.A. § 5536 to attorney's fees that were earned prior to a determination of incapacity and paid by [Kate]?

2.      Did the court err in ordering the return of fees based on a presumption that the funds originated from assets transferred by [Ms.] Rosenbloom prior to the date that she was adjudicated incapacitated?

3.      Did ordering the return of fees, in addition to requiring Kate . . . to return the value of assets transferred to her, result in a windfall to the . . . estate?

4.      Whether sufficient evidence exists to support the [Orphans'] Court's findings that [Ms.] Rosenbloom lacked capacity to make financial decisions four months prior to an adjudication of incapacity?

Hammer's Brief at 3. We only address Attorney Hammer's first issue, because our disposition of it moots her remaining three claims.

Attorney Hammer claims the orphans' court misapplied Section 5536 of the PEFC. She argues that the basis for the Guardian's claim against her was "factually inaccurate." *Id.* at 24.

According to the Guardian's filing in the orphans' court, both payments to Attorney Hammer occurred after that court declared Ms. Rosenbloom an incapacitated person. As such, the Guardian argued that Attorney Hammer needed to petition the court for disbursement under 20 Pa.C.S.A. § 5536(a). *See* September 26, 2018 Letter of Mario Santilli, Esq. on behalf of Guardian at 1. The Guardian reasserts that arguments in this Court.

Attorney Hammer counters that Section 5536(a) of the PEFC does not apply, because (1) her legal services to Kate and Ms. Rosenbloom predated Ms. Rosenbloom's incapacity; and (2) the legal fees were paid by Kate – *i.e.*, not the incapacitated person. Therefore, Attorney Hammer believes Kate's payments to her are valid, and she may retain the funds. Hammer's Brief at 25-16.

When reviewing a decree of the orphans' court, our scope of review is confined to determine if "the record is free from legal error and to determine if the orphans' court's findings are supported by competent and adequate evidence." *In re Klein's Estate*, 378 A.2d 1182, 1187 (Pa. 1977). In the latter pursuit, we defer to the finder of fact and "take as true all the evidence

supporting the [orphans' courts'] findings and all reasonable inferences therefrom." *In re William L.*, 383 A.2d 1228, 1237 n.12 (Pa. 1978). "However, we are not limited when we review the legal conclusions that [the] orphans' court has derived from those facts." *In re Estate of Cherwinski*, 856 A.2d 165, 167 (Pa.Super. 2004) (capitalization omitted). In addition, any "issue of statutory construction presents a question of law for which our standard of review is *de novo*." *In re Navarra*, 185 A.3d 342, 350 (Pa.Super. 2018).

When the orphans' court ordered Attorney Hammer to pay $65,000 into the estate of Ms. Rosenbloom, it reasoned as follows:

> Attorney Hammer testified that, pursuant to an invoice issued to [Ms. Rosenbloom], she received the following payments for attorney's fees on the stated dates:

| June 5, 2016 | $1,500.00 |
| June 17, 2016 | $3,000.00 |
| June 17, 2016 | $2,300.00 |
| September 8, 2016 | $11,565.26 |
| October 24, 2016 | $55,000.00 |
| November 24, 2016 | $10,000.00 |

> She further stated that the payments were made by [Kate], not from [Ms. Rosenbloom's] funds.
>
> Reviewing [Attorney] Hammer's testimony, in conjunction with the testimony set forth in the other two hearings, the Court finds that [Attorney] Hammer was paid with funds belonging to [Ms. Rosenbloom] without receiving authorization from this Court. Per the above testimony and the Court's findings, the $283,000 transferred to [Kate] was undertaken at a time when [Ms. Rosenbloom] was cognitively impaired and not capable of making an informed decision about her financial affairs. Accordingly, the Court has ordered that those funds are to be returned to [Ms.

Rosenbloom's] estate. As [Attorney] Hammer was unable to accurately quantify [Kate's] financial estate or her assets, and [Kate] failed to trace the $55,000 payment and the $10,000 payment to funds belonging solely to her, it must be presumed that the funds used to pay [Attorney] Hammer were the funds that [Ms. Rosenbloom] transferred to [Kate] approximately four months prior to paying the invoices. For those reasons, [Attorney] Hammer is directed to return the sum of $65,000 to the estate of [Ms. Rosenbloom].

Orphans' Court Memorandum Opinion and Order, 3/1/19, at 9-10 (citations to the record omitted).

The analysis of the orphans' court followed a three-step process. First, it determined that Ms. Rosenbloom was incapacitated when she gave money to Kate, who had exerted undue influence over Ms. Rosenbloom to acquire that money.[5] Second, the court found that Kate used that money to pay Attorney Hammer's legal bills. Third, the orphans' court concluded that, because the gift from Ms. Rosenbloom to Kate was invalid, the payment from Kate to Attorney Hammer was equally invalid.

In making this determination, the court did not find that Attorney Hammer exerted undue influence over Ms. Rosenbloom, that she overcharged for her legal service, that she failed to render proper service, or that she in anyway defrauded Ms. Rosenbloom. Instead, the orphans' court relied on the

---

[5] Kate has not appealed the court's decision that she exerted undue influence over Ms. Rosenbloom. Our review therefore extends only to whether Kate's payment to a third party for services rendered is subject to the control of the orphans' court.

argument of the Guardian, namely that Kate's payments to Attorney Hammer

violated Section 5536(a) of the PEFC. We disagree.

That section permits the orphans' court to direct payments on behalf of

an incapacitated person from his or her estate. It provides:

> **(a) In general.--**All income received by a guardian of the estate of an incapacitated person . . . in the exercise of a reasonable discretion, may be expended in the care and maintenance of the incapacitated person, without the necessity of court approval. The court, for cause shown and with only such notice as it considers appropriate in the circumstances, may authorize or direct the payment or application of any or all of the income or principal of the estate of an incapacitated person for the care, maintenance, or education of the incapacitated person, his spouse, children or those for whom he was making such provision before his incapacity, or for the reasonable funeral expenses of the incapacitated person's spouse, child, or indigent parent. In proper cases, the court may order payment of amounts directly to the incapacitated person for his maintenance or for incidental expenses and may ratify payments made for these purposes. For purposes of this subsection, the term "income" means income as determined in accordance with the rules set forth in Chapter 81 (relating to principal and income), other than the power to adjust and the power to convert to a unitrust.

20 Pa.C.S.A. § 5536(a).[6]

---

[6] Aside from reproducing this statute in its appellate brief, the Guardian cites no authority to defend its assertion that an orphans' court may order an attorney to forfeit her legal fees to an estate. Nor does the Guardian attempt to analyze the language of the statute to demonstrate how the General Assembly imparted such authority to an orphans' court. Instead, the Guardian says, "even the earliest cases recognize the obligation of the orphans' court to oversee and question any request to use the incapacitated person's resources." Guardian's Brief at 15-16. Assuming that that proposition is correct, it is of no help to the Guardian in its quest to render Attorney Hammer's legal fees an asset of the estate.

- 9 -

We note the Rules of Statutory Construction mandate that "the court must give plain meaning to the words of the statute. It is not a court's place to imbue the statute with a meaning other than that dictated by the plain and unambiguous language of the statute." *In re R.D.R.*, 876 A.2d 1009, 1016 (Pa.Super. 2005); *see also* 1 Pa.C.S.A. § 1921(b).

The language of 20 Pa.C.S.A. § 5536(a) only authorizes the orphans' court to exert authority over funds within the estate. Nothing in that section gives the court the authority over funds that lie outside "the income or principal of the estate of an incapacitated person." 20 Pa.C.S.A. § 5536(a).[7]

Moreover, this section does **not** authorize an orphans' court to seek payment of funds into the estate of an incapacitated person from a third-party transaction. For the court to exercise its authority, the principal and income in question must be a part of the estate.

Here, the orphans' court ordered Kate to refund the full $283,000 to the estate, as an invalid, *inter vivos* gift from Ms. Rosenbloom to Kate. However, under Section 5536(a), the court could not go beyond Kate to recover estate

_____

[7] Our legislature defined both "principal" and "income" for PEFC purposes. The "principal" of an estate is "Property held in trust for distribution to a remainder beneficiary when the trust terminates or property held in trust in perpetuity." 20 Pa.C.S.A. § 8102 (definition of "Principal"). In other words, the principal is the current assets of an estate at the time of the estate's establishment. An estate's "income" is "Money or property which a fiduciary receives as current return from a principal asset. The term includes a portion of receipts from a sale, exchange, or liquidation of a principal asset to the extent provided in Subchapter D (relating to allocation of receipts during administration of trust)." 20 Pa.C.S.A. § 8102 (definition of "Income"). In other words, income is profit generated from the principal.

funds that Kate may have subsequently transferred to third parties, including Attorney Hammer.

The $65,000 that Kate paid to Attorney Hammer and her law firm was never "property held in trust for distribution to" Ms. Rosenbloom. 20 Pa.C.S.A. § 8102 (definition of "Principal"). Nor was it money "which [the guardian] receive[d] as current return from a principal asset [or] a portion of receipts from a sale, exchange, or liquidation of a principal asset . . . ." 20 Pa.C.S.A. § 8102 (definition of "Income"). Thus, the $65,000 was neither principal nor income of the estate. The Guardian's attempt to secure that money in an orphans'-court proceeding under 20 Pa.C.S.A. § 5536(a) fails.

Contrary to the belief of the orphans' court and the Guardian, Attorney Hammer had no obligation to petition that court to be paid for services to Kate and Ms. Rosenbloom, when those services predated the decree of incapacity and were paid for by Kate. Regardless of how Kate obtained the money she paid Attorney Hammer, those funds had been passed to a third party and, thus, may not be acquired under Section 5536(a) of the PEFC.

Order reversed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary


Date:  2/14/2020